[Cite as *State v. Greenlee*, 2020-Ohio-2957.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case Nos. 28467 & 28468 |
| | : | |
| v. | : | Trial Court Case Nos. 2018-CRB-1708 |
| | : | 2018-CRB-2232 |
| KIEL T. GREENLEE | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : | Municipal Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of May, 2020.

. . . . . . . . . . .

JOHN D. EVERETT, Atty. Reg. No. 0059911, Assistant Prosecuting Attorney, City of Kettering Prosecutor's Office, 2325 Wilmington Pike, Kettering, Ohio 45420
    Attorney for Plaintiff-Appellee

THADDEUS A. HOFFMEISTER, Atty. Reg. No. 0081977, and Legal Interns Samantha Hughes and Davis Schwartz, University of Dayton School of Law, 300 College Park Drive, Keller Hall, Dayton, Ohio 45469
    Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Kiel T. Greenlee appeals from his conviction following a negotiated guilty plea to charges of disorderly conduct in two separate cases.

{¶ 2} In his sole assignment of error, Greenlee contends the trial court erred in overruling a presentence plea-withdrawal motion he filed one day before sentencing in the two cases, which have been consolidated for appeal.

{¶ 3} In September 2018, Greenlee was charged with domestic violence, a first-degree misdemeanor, in Kettering Municipal Court Case No. 2018-CRB-1708. In November 2018, he was charged with domestic violence and assault, both first-degree misdemeanors, in Kettering Municipal Court Case No. 2018-CRB-2232.

{¶ 4} On February 15, 2019, Greenlee appeared for a final pretrial conference in the first case. He had an own-recognizance bond at the time. He also knew that an arrest warrant had been issued for him in the second case. (Tr. at 17-18.) While waiting in a hallway for his pretrial conference, Greenlee was arrested and taken to a holding cell in connection with the second case. (Tr. at 19-20.) A short time later, he met with his attorney about the situation. During the subsequent hearing on his plea-withdrawal motion, Greenlee testified that defense counsel told him the second case had a "very high" bond, which Greenlee could not afford. (Tr. at 21.) According to Greenlee, his attorney told him the only way he would be getting "out of that cell and not going downtown to [c]ounty [jail]" would be to accept a plea bargain in the two cases. (Tr. at 22.) Greenlee testified that the offer was to plead guilty to one count of fourth-degree-misdemeanor disorderly conduct in each case.

{¶ 5} Instead of proceeding with a pretrial conference in the first case, Greenlee

accepted the plea bargain. He appeared in open court on February 15, 2019 and pled guilty to disorderly conduct in both cases. (Tr. at 11.) The trial court accepted the plea, ordered a presentence investigation, and set the matter for sentencing on March 13, 2019. One day before sentencing, however, Greenlee moved to withdraw his plea in both cases. In his written motion, he proclaimed innocence and asserted that his guilty pleas were not freely and voluntarily made, as he entered them "for the purpose of being released from custody." In light of Greenlee's motion, the trial court postponed sentencing and held a plea-withdrawal hearing on May 29, 2019.

{¶ 6} The first witness at the hearing was Greenlee. As set forth above, he testified that he pled guilty because his attorney told him that accepting a plea deal was the only way he would get to go home that day. Greenlee testified that he responded by telling counsel that he "felt very strong-armed and duressed [sic] into taking these pleas" in order to get released from confinement. (Tr. at 23.) According to Greenlee, his attorney then reiterated that accepting the plea deal "was the only way that [he] was going to be getting released that day." (*Id.*) Greenlee also claimed his attorney told him it would be hard to fight the two cases sitting in jail. (Tr. at 24.) He also testified that he possessed "proof of affirmative defenses." (*Id.*) Based on those two factors—duress and viable affirmative defenses—Greenlee asserted that he should be permitted to withdraw his pleas. (Tr. at 25.) On re-direct examination, he suggested that a sense of "panic" and surprise at being arrested overcame his free will, causing him to feel that "the only way out" was to accept a plea bargain. (Tr. at 29.)

{¶ 7} Following Greenlee's testimony, the prosecution called Kyle Lennon, who was Greenlee's attorney at the time of the plea bargain. Lennon confirmed that he spoke

to the prosecutor about a global resolution of the two cases before presenting the plea bargain to his client. (Tr. at 34.) The final witness was prosecutor John Everett. He testified that he drafted a plea agreement, amended the charges to disorderly conduct, and gave the agreement to defense counsel. (Tr. at 39.) On cross-examination, Everett opined that Greenlee could not have been "shocked" about being arrested given his awareness of the outstanding arrest warrant in connection with the second case. (Tr. at 41.) Everett also testified that, based upon his experience with the trial court judge, Greenlee likely would have been required to post a cash bond rather than an own-recognizance bond on the second domestic-violence case. (Tr. at 43.)

{¶ 8} Following the hearing, the trial court overruled Greenlee's motion to withdraw his guilty pleas. (Entry & Order, June 20, 2019.) In support of its ruling, the trial court reasoned:

Three weeks after his pleas and one day before sentencing, Defendant apparently had a change of heart and through counsel filed a motion to withdraw his pleas asserting he wasn't guilty and made the pleas for the sole purpose of getting out of jail. The Court set the motion for a hearing. Based on a potential conflict of interest between Defendant and his attorney, the Court continued the original hearing date and appointed new counsel to represent Defendant.

At the hearing Defendant claimed that he was under duress and only pled guilty because he was afraid that he would be held in jail if he did not plead. Yet, the record is devoid of any representation to Defendant that the Court would hold him in jail if he did not accept the plea agreement which

he and counsel requested.

The credible testimony offered at the hearing indicates that the Defendant through his counsel approached the State asking for the plea offer that was ultimately made and accepted by Defendant.

Defendant pointed out in his testimony that he has extensive training as a paralegal and significant experience in the legal system. Yet he now claims that he pled guilty due to duress and threats. Yet the record is devoid of any such threats.

* * *

In the instant case, the Court finds that Defendant's claims of duress lack credibility. His demeanor in Court at the time of his pleas was not that of a timid, uneducated or frightened man, but rather that of a man who knew exactly what he was doing, who knowingly, voluntarily and intelligently pled guilty to amended less serious charges. Then, three weeks later, one day before sentencing, Defendant suddenly claims duress in an attempt to set aside those pleas. The fact that Defendant in his testimony clearly comprehends what he must claim if he is to successfully have his pleas vacated, does not make his claim honest or sincere. In this instance the Court finds the claim disingenuous.

Defendant has played games with the law throughout the pendency of these matters, by ignoring legal procedures, mocking the Court and doing things his way. Perhaps he believes that if he is successful in withdrawing his knowing, voluntary and intelligent pleas he will be able to continue

playing games his way rather than complying with the rules that apply to everyone else. This the Court cannot sanction. Accordingly, Defendant's motion to withdraw his guilty pleas in the above-captioned cases is hereby overruled.

(Tr. at 4-7.)

{¶ 9} The trial court sentenced Greenlee to concurrent 30-day jail terms. In one of the cases, it suspended 25 days and gave him two days of jail-time credit. In the other case, it suspended 27 days with no jail-time credit. The result was that Greenlee was required to serve a three-day jail sentence. He also received a $100 fine in each case and was ordered to pay court costs. Finally, the trial court imposed a two-year probation term.[1]

{¶ 10} On appeal, Greenlee challenges the trial court's overruling of his motion to withdraw his guilty pleas. That issue is governed by Crim.R. 32.1, which provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶ 11} A presentence motion to withdraw a guilty plea "should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). But even under the presentence standard, the right to withdraw a plea is not absolute. A trial court retains discretion to overrule a presentence motion. *Id.* We review a trial court's ruling on a presentence motion to withdraw a plea for an abuse of discretion. *State v. Massey*, 2d

---

[1] We note that Greenlee moved for a stay of execution of his sentences, thereby negating any potential mootness issue.

Dist. Champaign No. 2015-CA-1, 2015-Ohio-4711, ¶ 10, citing *State v. DeJesus*, 2d Dist. Greene No. 2015-CA-4, 2015-Ohio-4111, ¶ 16.

{¶ 12} When reviewing a trial court's denial of a presentence motion to withdraw a plea, we examine nine factors: "(1) whether the accused was represented by highly competent counsel, (2) whether the accused was given a full Crim.R. 11 hearing before entering the plea, (3) whether a full hearing was held on the motion, (4) whether the trial court gave full and fair consideration to the motion, (5) whether the motion was made within a reasonable time, (6) whether the motion sets out specific reasons for the withdrawal, (7) whether the accused understood the nature of the charges and possible penalties, (8) whether the accused was perhaps not guilty of or had a complete defense to the charge or charges, and (9) whether the state is prejudiced by withdrawal of the plea." *State v. Betts*, 2d Dist. Clark No. 2019-CA-18, 2019-Ohio-5008, ¶ 17. A balancing test applies to the foregoing factors, and no single factor is dispositive. *Massey* at ¶ 11. The ultimate question is whether there exists a "reasonable and legitimate basis for the withdrawal of the plea." *Xie* at 527.   A "change of heart" is not enough. *Betts* at ¶ 16.

{¶ 13} Here Greenlee addresses each of the nine factors, arguing that they collectively establish a reasonable and legitimate basis for withdrawing his guilty pleas. With regard to the first factor, he concedes that his attorney did not render constitutionally ineffective assistance in connection with the plea bargain. He suggests, however, that counsel "likely" failed to provide highly-competent representation. In support, he cites his hearing testimony that he accepted the plea agreement under "duress" because defense counsel told him accepting the deal was the only way to get out of jail that day.

{¶ 14} We find Greenlee's argument about defense counsel's level of competence

unpersuasive for at least three reasons. First, the trial court explicitly found not credible his claim about being under "duress" due to concern about being required to remain in jail. Second, other than Greenlee's testimony (which the trial court found lacking in credibility), the record contains no evidence establishing that defense counsel did tell him he would remain in jail with a cash bond set if he did not accept a plea deal. Third, even if defense counsel opined that Greenlee would not be released from jail that day unless he accepted the plea bargain, we see nothing improper about expressing this opinion. At the plea hearing, the prosecutor similarly testified that, based on his experience with the trial court judge, Greenlee would not have received an own-recognizance bond on the second domestic-violence case. The fact that Greenlee may have had to choose between remaining in jail following his arrest or accepting a plea bargain and being released does not demonstrate sub-par performance by counsel. Assuming, arguendo, that Greenlee faced such a decision, he made a reasoned choice to accept an objectively favorable plea bargain and to be released. Three weeks later, on the eve of sentencing, Greenlee changed his mind and moved to withdraw his guilty pleas. The trial court reasonably characterized this action by Greenlee as a "change of heart," which is not grounds to withdraw a plea before sentencing.

{¶ 15} With regard to the second and third factors, Greenlee concedes that he received a full Crim.R. 11 hearing before entering his guilty pleas and that a full hearing was held on his plea-withdrawal motion. As for the fourth factor, however, he contends the trial court did not give full and fair consideration to his motion. More specifically, he argues that it was "unfair" to have his former counsel testify about the circumstances surrounding the plea agreement when essentially the same information could have been,

and was, obtained through the testimony of the prosecutor. As "further evidence" of the trial court's failure to give his motion full and fair consideration, Greenlee contends the trial court should have required an offer of proof to determine whether defense counsel possessed any information that could not be obtained another way. Finally, Greenlee claims the trial court failed to consider the lack of evidence to rebut his claim that he was under "duress," that it unfairly characterized his plea-withdrawal motion as "playing games," that it exhibited disdain for him by remarking that he had experienced a "change of heart," and that it held him to a higher standard by noting that he once was a paralegal.

{¶ 16} Upon review, we find Greenlee's arguments to be without merit. We fail to see how he was prejudiced by his former attorney's testifying consistently with the prosecutor's testimony about the undisputed circumstances of the plea agreement. We also see no error in the trial court's failing, sua sponte, to demand an offer of proof. As for Greenlee's claimed duress, the trial court acted within its discretion in finding his testimony not credible. In any event, as explained above, any duress stemmed from the fact that Greenlee found himself in jail after being arrested on an outstanding warrant. He made a calculated choice to accept a plea bargain to extricate himself from that situation, and the trial court reasonably characterized his eleventh-hour plea-withdrawal motion as a "change of heart." Moreover, the trial court's reference to a "change of heart" was not a sign of disdain. That language is found in case law governing plea-withdrawal motions. As for its belief that Greenlee was "playing games," the trial court was in the best position to assess his actions and motives. We also are unpersuaded that the trial court held Greenlee to a "higher standard" when it referenced his experience as a paralegal. The trial court made the reference merely to point out that he had some familiarity with legal

matters.

**{¶ 17}** With regard to the fifth factor, Greenlee contends his presentence plea-withdrawal motion was made within a "reasonable" time because he made it before sentencing, as required by Crim.R. 32.1. In our view, this merely establishes that Greenlee made the motion within a permissible time. The trial court still was entitled to consider the fact that Greenlee made the motion weeks after entering his plea and literally the day before sentencing.

**{¶ 18}** As for the sixth factor, Greenlee argues that his motion identified specific reasons for withdrawing his plea. But the only reasons found in the motion included a general claim that he was "not guilty" and a claim that his plea was "not freely and voluntarily entered" because he accepted a plea bargain "for the purpose of being released from custody." (Motion to Withdraw Plea). During the plea-withdrawal hearing, Greenlee elaborated on his "not guilty" claim only to the extent of professing to have non-specified "proof" of non-specified "affirmative defenses." As for the voluntariness of Greenlee's plea and his desire to be released from custody, we fully addressed that issue above.

**{¶ 19}** With regard to the seventh factor, Greenlee argues that he did not understand the nature of the charges against him and the possible penalties when he pled guilty. This argument is undermined, however, by his concession that the trial court provided him with a full Crim.R. 11 hearing prior to the entry of his plea. Moreover, the hearing transcript reflects that the trial court addressed the nature of the charges and the penalties with Greenlee, who indicated that he understood. (Tr. at 4-11.) Greenlee now claims on appeal that he "robotically" answered "yes" when the trial court inquired about

his understanding. He asserts that his answers were given out of habit due to his prior experience with the criminal-justice system and were not indicative of real understanding. Once again, however, the trial court reasonably could have concluded otherwise. Based on its plea colloquy with Greenlee, the trial court reasonably could have found that he did understand the nature of the charges and the penalties when it accepted his guilty plea to two counts of disorderly conduct. The fact that Greenlee had six prior disorderly conduct convictions supported such a determination. (Tr. at 49.)

{¶ 20} As for the eighth factor, Greenlee insists that he had a complete defense to the charges. He argues that he "clearly and unequivocally" established that fact during his plea-hearing testimony. But he did not. As set forth above, he simply claimed to have non-specified "proof" of non-specified "affirmative defenses." He neither identified any particular defense during the hearing nor made any attempt to establish its viability. The most he did was reference an "affidavit of evidence" purportedly showing that he had affirmative defenses. (Tr. at 22.)

{¶ 21} With respect to Greenlee's alleged "complete defense," the record in Case No. 2018-CR-2232 reflects that Greenlee filed a pro se Crim.R. 12 motion to dismiss on December 3, 2018. The complaint in that case alleged that Greenlee had picked the lock on his stepson's bedroom door with a pocket knife and then "came towards" his stepson with the open knife in his hand. His stepson allegedly pushed him away. Greenlee then saw his stepson standing in the hallway with a baseball bat. According to the complaint, Greenlee "came towards" his stepson and pushed him against the wall, causing a dent in the wall. (Statement of Facts, Case No. 2018-CRB-2232.) In his motion to dismiss in that case, Greenlee argued that his stepson had threatened him with the baseball bat and that

he responded by putting his stepson "against the wall." He also argued that he merely had used a multi-tool to pick a door lock to gain entry in the child's bedroom. (Motion to Dismiss.) His motion to dismiss raised an affirmative defense of reasonable and proper parental discipline. (*Id.*) The trial court overruled the motion, noting that it relied on Greenlee's version of events. (Order, Dec. 5, 2018.) Greenlee responded by renewing his pro se motion to dismiss two weeks later, arguing that the trial court had committed plain error in overruling the first motion. (Motion, Dec. 20, 2018.) In support of his renewed motion, Greenlee provided his own affidavit as well as affidavits from his mother and wife. Once again, however, Greenlee's affidavit supported his version of events, as did the affidavit from his wife. His mother was not present at the time of the incident, and her affidavit did not even address him approaching his stepson with a knife or pushing the child against a wall. Notably absent from Greenlee's submissions was an affidavit from the alleged victim, his stepson.

{¶ 22} In our view, the most that can be gleaned from Greenlee's affidavits is that he *might* have had a defense in the second domestic-violence case if a trier of fact ultimately believed his version of events. Regardless, Greenlee plainly knew about that defense when he entered his guilty pleas, and the trial court was entitled to take that fact into consideration in denying his plea-withdrawal motion. *State v. Crawford*, 2d Dist. Montgomery No. 27046, 2017-Ohio-308, ¶ 15 ("A court also does not abuse its discretion by denying a [presentence] withdrawal motion if the motion is based on a complete defense that the defendant was aware of when he entered the plea.").

{¶ 23} Finally, with regard to the ninth factor, we agree with Greenlee that it does not appear as if the State would have been materially prejudiced if the trial court had

allowed him to withdraw his guilty pleas.

{¶ 24} Upon considering all nine factors, however, the trial court did not abuse its discretion in finding that Greenlee had experienced a change of heart and that he had not shown a reasonable and legitimate basis for withdrawing his guilty pleas. Accordingly, we overrule the assignment of error.

{¶ 25} The judgment of the Kettering Municipal Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

John D. Everett
Thaddeus A. Hoffmeister
Hon. Frederick W. Dressel